## G. W. HAINES v. THE STATE.

1. ELECTION LAW. — The act of 1876, entitled "An act regulating elections," provides that "during the entire day of any election for municipal, county, district, or State officers," it shall be unlawful for any establishment where liquors are sold "to be open;" and, in a subsequent clause of the same section, declares violators "guilty of a misdemeanor, and subject to indictment." *Held,* that prosecutions under this provision may be instituted by information as well as by indictment, — the rule not being applicable which makes a prescribed mode of prosecution the exclusive one, if it is contained in the prohibitory clause of the act. The offence is a misdemeanor within the jurisdiction of the County Courts, and the Constitution and statutes provide that "prosecutions in the County Courts may be commenced by informations in writing."

2. SAME. — The phrase "during the entire day of any election," used in said act, means the natural day of twenty-four hours, commencing and terminating at midnight. It is not to be understood as denoting only the hours during which the polls are open.

3. CASE STATED. — Appellant kept a "saloon" as a licensed retailer of liquors, and in the same house kept sundry other commodities for sale, paying tax as a merchant. On an election-day, but after the polls were closed, he opened his establishment and invited a number of by-standers in to drink. He was prosecuted by information for having his saloon open on an election-day, and his conviction is sustained.

APPEAL from the County Court of Wood. Tried below before the Hon. W. J. JONES, County Judge.

The opinion states the case.

*Banks & Wright,* for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, J.   The twenty-first section of the act of 1876 (Gen. Laws 15th Leg. 310) provides that " during the entire day of any election in this State for municipal, county, district, or State officers, it shall be unlawful for any barroom, saloon, or other place, house, or establishment where vinous, spirituous, or intoxicating liquors are sold, to be open ; but the same shall be closed by any sheriff or constable of the county, or by any constable whose special appointment is provided for by this act, on the order of the judges of election ; and it shall be unlawful for any person or persons, or firm, to sell, barter, or give away any vinous, spirituous, malt, or intoxicating liquors, within the limits of the county within which such election is being held, during the day thereof.   And any person violating any provision of this section shall, for each offence, be guilty of a misdemeanor, and subject to indictment, and may be fined in any sum not less than one hundred dollars nor more than five hundred dollars for each offence ; *provided,* nothing herein contained shall prevent the sale of liquor at any drug-store, or establishment where drugs are sold for medical purposes, on the prescription of a practising physician, nor to the sale of liquor by regular wholesale merchants, to be shipped or sent out of the county ; *and provided further,* that nothing herein contained shall prevent stores from being opened for the sale of other goods, wares, and merchandise."

Sect. 12 of the same act provides that " all the elections in this State shall be held for one day only at each election, and the polls shall be open on that day from eight o'clock, A. M., to six o'clock, P. M."   Gen. Laws 15th Leg. 307.

Appellant was tried and convicted in the County Court under a prosecution instituted by information.   Evidence adduced on the trial established the facts that on the day of the election, and after the voting was over and the polls were

declared closed by the sheriff, the defendant threw open the doors of his bar-room or saloon, and invited the crowd to come in and drink, — that "it was his treat." Some if not all of the crowd accepted his amiable hospitality, and partook of the free drinks so generously offered. Over the front of the house was a sign marked "saloon," and in the establishment defendant kept a bar-room where spirituous and vinous liquors were sold by the drink. Other evidence tended to show that defendant kept for sale in his saloon "sardines, oysters, salmons, pickles, canned fruits, flour, vinegar, cigars, and other articles besides whiskey and brandy," etc., for the privilege of selling which "defendant pays a tax as fourth-class merchant, besides a tax to retail liquors and tobacco."

The motion in arrest of judgment presented the issue that defendant could not, as was attempted, be prosecuted for a violation of the law by information, because the statute in terms declared that for such offences the offender would "be guilty of a misdemeanor, *and subject to indictment;*" and that the statute, having prescribed the proceeding by indictment, excluded the right to proceed by information. In support of this proposition we are cited by counsel to *Phillips* v. *The State*, 19 Texas, 158, where it is declared that, "if the manner of proceeding for the penalty be contained in the same clause which prohibits the act, the mode of proceeding given by the statute must be pursued, and no other." We do not controvert the correctness of the rule as thus enunciated, but its applicability to this case. As seen from the statute (sect. 21) above quoted, the prohibition and the penalty are not in the same but in different clauses. A violation of the law is declared to be a misdemeanor; and, in construing it, if the legislative intent were doubtful, it must be taken in connection with other acts passed at the same session by the Legislature. In the "act to organize County Courts and define their powers and jurisdiction," we find that County Courts are

given exclusive original jurisdiction of all misdemeanors, except such as involve official misconduct, and those where the punishment is by fine only, and the highest fine does not exceed $200. Acts 1876, p. 172, sect. 3.

Again, at p. 20, sect. 8, of the Acts of 1876, we find that " prosecutions in the County Courts may be commenced by information in writing," etc. And this same provision is contained in sect. 17, art. 5, of the Constitution; and also, by necessary implication, in sect. 10, art. 1, of the Constitution.

We cannot think that the Legislature intended that this particular class of misdemeanors should be reached and punished by indictment only, and we can perceive no reason for their so doing; nor do we believe they have so declared. Consequently, we are of opinion that the court did not err in overruling the motion in arrest of judgment.

It is contended that the court erred in charging the jury that the words " entire day," used in the statute (sect. 21, *supra*), meant " a civil or natural day," — that is, from midnight to midnight; and it is insisted that the words " during the entire day of any election " mean nothing more than the period during which the election was in progress, — that is, from 8 A. M. to 6 P. M., as provided in sect. 12 of the act. We think the instruction was correct both in reason and law. Evidently the Legislature, by the use of the words " entire day," meant more than from sunrise to sunset, or from 8 A. M. to 6 P. M.

Generally, in legal signification, the word " day " includes the time elapsing from one midnight to the succeeding one. 2 Bla. Comm. 141. And another general rule is that the law takes no cognizance of fractional parts of a day. *Speer* v. *The State*, 2 Texas Ct. App. 246, and authorities cited.

But it is said that defendant's bar-room and saloon was also a storehouse, and that, under the last proviso of sect. 21, *supra*, he had the right to keep the same open for the

sale of his other goods, wares, and merchandise.   There might be some plausibility in the position if the evidence had left us in doubt as to his motives and purposes in opening the doors.   This it does not do.   His object was, not to sell those " other goods," but to " treat the crowd."   The crowd, or those of it who responded, for aught that appears with promptness, to the invitation, were not misled as to his meaning.   It is evident that the first State's witness, Quitman Anderson, who was one of the party invited, did not get " any oysters, sardines, pickles, fruits," etc. ; for he expressly says, " I don't remember seeing any such things in his house ; there was a crowd in the house, and as soon as I got a drink I came out."

The charge of the court, as given, presented the law, and the special instructions asked for defendant were properly refused.

We see no error requiring a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*